STATE OF MAINE
ANDROSCOGGIN, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-81

ROSALIE BOULGIER,    )
                     )
          Plaintiff  )
                     )
vs.                  )          DECISION
                     )
LONGFELLOW'S GREENHOUSES,  )
                     )
          Defendant  )

On July 8, 2020, Plaintiff Rosalie Boulgier (hereafter "Rosalie") filed with the court a civil

complaint against Defendant Longfellow's Greenhouses (hereafter Longfellow's) alleging

negligence and damages as a result of a slip and fall incident Rosalie experienced at Longfellow's

facility on May 23, 2019. Trial was held on Rosalie's complaint on November 2, 2022. At trial,

testimony was received from Rosalie, her husband Wendall Boulgier, Scott Longfellow (hereafter

"Scott") who is the owner of Longfellow's, and Ellie Bilodeau (hereafter "Ellie") and William

Bilodeau (hereafter "Will") who are both employed at Longfellow's and Scott's children. Also

admitted into evidence were the following exhibits"

P. Ex. 1- Medical Records;

P. Ex. 2- Medical Bill Summary;

P. Ex.3 – Photograph of Rosalie on floor after fall;

P. Ex. 4- Photograph of Rosalie on floor after fall;

P. Ex. 5- Photograph of Rosalie at hospital;

P. Ex. 6- Photograph of Rosalie's knee post surgery;

1

P. Ex. 7- Photograph of knee suture removal;

P. Ex. 8- Photograph of knee;

P. Ex. 9- Scene Photograph after fall;

P. Ex. 10- scene photograph admitted for layout purposes;

P. Ex. 11- Copy of transcript of deposition of William Longfellow taken April 9, 2021;

P. Ex. 14- Receipt for purchase on May 23, 2019 at 12:04;

D. Ex. 1- Copy of transcript of deposition of Rosalie taken May 21, 2021;

D. Ex. 2- Photograph's of flip-flops Rosalie was wearing at time of fall;

D. Ex. 3- Photograph of Rosalie on floor after fall (same as P. Ex. 3);

D. Ex. 4- Photograph of Rosalie on floor after fall (same as P. Ex. 4);

D. Ex. 5- Scene Photograph after fall (same as P. Ex.9)


1. Standard of Review for Premises Liability (standard jury instruction).

Negligence cannot be presumed or inferred from the mere fact that an accident happened or that an injury has occurred.  Instead, there must be specific evidence of negligence.

Negligence is the failure to use reasonable care.  Reasonable care is that degree of care that a reasonably careful person would use under like circumstances.  Negligence may consist of doing something that a reasonably careful person would not do under like circumstances or negligence may consist of failing to do something that a reasonably careful person would do under like circumstances.  The law does not spell out how a reasonably careful person should act under the specific circumstances of any given case. That is for the factfinder to determine. It is, in other words, the failure to use ordinary care under the circumstances, considering all of the evidence of the case.

In this case the Plaintiff alleges the Defendant was negligent for allowing a dangerous condition to exist on the premises. Please note, a person is not required to guarantee the absolute safety of their premises. The Defendant's duty is to use ordinary care to ensure the premises are reasonably safe, guarding against all reasonably foreseeable dangers.

So, regarding premises, negligence is (1) doing something that an ordinary, careful person would not do, or (2) failure to do something that an ordinary careful person would do, or (3) allowing or continuing on the premises an unsafe condition that an ordinary, careful person would not allow or continue on the premises in the same situation. It is, in other words, the failure to use ordinary care under the circumstances in maintaining the premises, considering all of the evidence in the case.

In evaluating the question of negligence, if it is found there was an unsafe condition of the premises that created a risk of injury to persons using the premises, and it is found that both the unsafe condition and the risk of injury from the unsafe condition was or should have been apparent to persons on the premises, then we must also recognize the following:

1. Any person has a duty to take reasonable care for their own safety. That duty includes the duty to see what can be seen and to take reasonable care regarding risks that can be seen.

2. Even if an unsafe condition of the premises creates a risk of injury that is or should be apparent to persons on the premises, the owner of the premises has a duty to warn of or take other reasonable action to correct or avoid the unsafe condition if the owner should anticipate that persons using the premises will encounter the unsafe condition because it is advantageous to do so or because the person is likely to be distracted.

If the Plaintiff does not establish by a preponderance of the evidence that the Defendant was negligent, then the case is over, and a verdict for the Defendant must be entered. If the

3

Plaintiff does establish the Defendant was negligent, then the court must next consider whether the Plaintiff was comparatively at fault.

The Defendant in this case contends that the Plaintiff has negligently caused her own damages. This is a defensive claim and the burden of proof is therefore upon the Defendant. The Defendant must prove by a preponderance of the evidence that the Plaintiff was also negligent. In deciding the question of comparative negligence, the duty to use reasonable care applies to all parties equally.

If the Plaintiff proves by a preponderance of the evidence that the Defendant was negligent, and the Defendant has proven by a preponderance of the evidence that the Plaintiff was also negligent, then the court must apportion the relative degree of fault or responsibility for the Plaintiff's damage by comparing the degree to which each side departed from the standard of ordinary care. If it is found in the apportionment process that the Plaintiff was either equally responsible or more responsible than the Defendant for the damages sustained, then no damages shall be awarded to the Plaintiff and judgment must be entered for the Defendant.

However, if it is found that the Plaintiff's responsibility was less than that of the negligence of the Defendant, then the court shall proceed to the second phase of the comparative negligence calculations and apportion damages. In determining damages, the court shall first determine the total damages that would have been recoverable if the Plaintiff had not been at fault at all. Then the court shall reduce this total amount, by dollars and cents and not by percentage, to the extent that is deemed just and equitable having regard to the Plaintiff's share in the responsibility for the damages.

4

2. Findings of Fact.

A. The Event.

On May 23, 2019, Rosalie had left her home to run some errands and do some shopping. It was a nice Spring day and she was wearing flip-flops. (See D.Ex. 2). When she left her home she was not planning on stopping at Longfellow's. As she was driving home and near Longfellow's, Rosalie decided to stop at Longfellow's, which is a large garden center, to look for flowers for Memorial Day. She had shopped at Longfellow's on several prior occasions and had always liked the store and people that worked there.

Rosalie had been to greenhouses such as Longfellow's many times in the past. Rosalie acknowledged flip-flops would not be as safe to wear at a greenhouse as other footwear, but she had not planned on going to a greenhouse when she left her home that day. Rosalie did some shopping in the main store portion and was checking out when she noticed on display a certain type of petunia she wanted. Rosalie ended up speaking with Ellie Bilodeau, and inquired of Ellie where the petunias she was looking for were located.[1] Ellie offered to take Rosalie to where those specific petunias were located.

Ellie led Rosalie into greenhouse #10 and through the greenhouse towards the location where the flowers were located. Rosalie testified Ellie was walking quickly and she had a hard time keeping up, but she did not ask Ellie to slow down. When they were about 15 feet into the greenhouse, Rosalie slipped on water and fell to the floor striking her knee. Ellie was only 5 to 7 feet ahead of Rosalie when Rosalie fell, and Ellie heard Rosalie cry out, but did not see her fall. Neither Rosalie nor Ellie noticed any water, or mud, on the floor before Rosalie fell. About 5 feet

---

[1] Rosalie testified she spoke with Ellie in the store; Ellie testified she spoke with Rosalie in the mall area. The court cannot discern which is accurate but is a distinction that will not impact the findings.

away from the location Rosalie fell a "Wet floor" warning cone was positioned. (See P.Ex. 10 for an exemplar warning cone). Rosalie did not see the warning cone.

Ellie immediately attended to Rosalie and radioed to her father, Scott, and her brother, Will, for assistance. Both immediately went to the location, and found Rosalie sitting on the floor. They provided her assistance while waiting for the arrival of the ambulance and EMT's who had been called to respond.

While attending to Rosalie, Ellie, Scott and Will each observed that the floor was wet from water, but did not see any standing, pooled, puddled or accumulated water. And none of them found the floor to be slippery as they moved about attending to Rosalie. There was no indication the floor needed to be squeegeed. Rosalie's pants became wet from sitting on the wet floor.

Rosalie was in significant pain after she fell and while waiting for the EMT attendants. Ambulance attendants arrived and transported Rosalie to Central Maine Medical Center. She was diagnosed with a fracture of her right patella. Open reduction with internal fixation was recommended and performed the following day. She was discharged from the hospital on May 26, 2019. Following discharge, Rosalie attended 9 sessions of physical therapy. Although surgically Rosalie had a good result, she required significant assistance in the weeks following discharge. Although much improved, Rosalie remains with some restrictions and limitations due to her right knee.

Rosalie incurred medical bills totaling $31,607.04. Although Rosalie did some work outside the home before her fall, which she can no longer perform, she is not making a lost wage claim.

B. Condition of the Floor.

Greenhouse #10 where Rosalie fell is a large structure with a cement floor. Throughout the greenhouse are rows of tables to display the plants. The tables are separated into rows, creating aisles through which workers and customers can walk to access the plants. The surface of the cement in walkway aisles is described as "textured" and a bit "rough", which is by design as a result of an "anti-skid" substance having been applied to the aisles.

A significant portion of the testimony at trial was presented to the issue of how much water was on the floor when Rosalie fell. Based on the collective testimony of the witnesses and the scene photographs (see P.Ex's. 3, 4, 9, D.Ex's. 3, 4 and 5) the court finds that where Rosalie fell, the floor was wet from water, but there was no standing, excess, puddled or pooled water on the floor. The water on the floor was not of any measurable depth. Rosalie testified that her pants became soaked with water after sitting on the floor after she fell. The court does not doubt that her pants indeed became wet, but this does not establish that there was puddled or pooled or a measurable amount of accumulated water on the floor. The photographs remain the best objective indicator, which show the floor to be somewhat wet in that location, but there is no visible, puddled, pooled or standing water.

Rosalie also described the area where she fell as being "muddy". Again, the photographs best show the condition. (see again P.Ex's. 3, 4, 9, D.Ex's. 3, 4 and 5). These photographs were taken as the EMS attendants and Scott and Will were attending to Rosalie, and show footprints on the floor where personnel had moved around Rosalie several times while rendering aid. The photographs suggest potting soil or dirt was tracked onto the area of the floor that was wet as the

personnel moved about, creating the condition seen in the photographs which can best described as "dirty footprints".

There was no clear evidence presented how the particular area where Rosalie fell became wet, or why the "Wet Floor" warning cone was positioned there. There was speculation that small amounts of water could have dripped from either plants that had recently been watered or from utility carts used to move plants throughout the greenhouses. There was no evidence to support a finding of drain failures, or of a failure to clean-up after watering of plants. And there were no reports, complaints or sightings of water on the floor in Greenhouse #10 before Rosalie fell. In summary, the court finds that a wet condition existed on the floor where Rosalie fell, but there was not pooled, puddled or excess standing water; it was the type of condition that could be expected in a greenhouse where plants are routinely watered, and it being impossible and impractical to prevent small amounts of water from ending up on the floor as a result of the required watering process.

C. Longfellow's Watering and Clean-up Process.

Longfellow's acknowledges safety policies exist to prevent water from remaining or existing on the floors. Accordingly, Longfellow's performs the majority of the plant watering process in the mornings, starting at 6 am so the watering process can be finished before customers arrive. The plants are watered using water hoses. After the plants are watered, the hoses are rolled up, and the floors are squeegeed. The excess water on the floor is moved via a squeegee to the water drains installed in the floor. After squeegeeing, the floors are still wet from the remaining film of water, which condition typically dries in a short time, far quicker than if squeegeeing was not performed. "Wet Floor" warning cones are placed where the floors are wet.

Employees are also instructed that if they ever observe water on the floor at any time they are to immediately address the situation and have it squeegeed. Neither Ellie, Scott, nor Will believed the condition of the floor where Rosalie fell, which they observed almost immediately after her fall, was one that required squeegeeing or other form of attention, as there was not the quantity of water that required such action.

D. Footwear.

At the time of her fall, Rosalie was wearing flip-flops. (See D.Ex. 2). Rosalie chose her footwear when she left her home that morning, not at that time planning to visit a greenhouse. Rosalie acknowledges that for walking in a greenhouse, flip-flops are not as safe as traditional footwear. Longfellow's policies prohibit employees from wearing flip-flops, but their policy does not address customers. Customers are allowed to enter the facility wearing flip-flops.

When Ellie was leading Rosalie to the area in the greenhouse where the petunias were located, she had not noticed what Rosalie was wearing for footwear. Had she noticed Rosalie was wearing flip-flops, she would not have prevented Rosalie from entering and shopping.

3. Discussion.

Plaintiff claims Longfellow's was negligent by allowing a dangerous condition to exist on the floor in Greenhouse #10, and was also negligent in the manner Ellie led Rosalie through the greenhouse, including walking too fast, not providing sufficient warnings or care, and allowing her to wear flip-flops.

As to the condition of the premises, the court does not find that Longfellow's was negligent. As previously stated, Longfellow's is not a guarantor of safety; the duty is to use reasonable care.

To be sure, Longfellow's was opening its premises to customers, and a great many customers went through the facilities on a daily basis. But the building was a greenhouse, containing plants that required water. It is not reasonable nor practical to require the proprietor of such a facility to maintain floors such that they are bone dry at all times. The duty is to use reasonable care under the circumstances.

In this case, Longfellow's had an operating practice regarding how and when they watered the plants and post watering clean-up. After watering, the hoses were rolled up and the floors were squeegeed, and warning cones were placed where floors were wet. And all employees were to monitor the facility throughout the day. In addition, because of concerns the cement floors could become slippery as it was polished from wear, Longfellow's applied an anti-skid surface, causing the floor of the aisles where customers walked to be textured and roughed.

As for the location Rosalie fell, it was undisputedly wet. But it was not wet because of an act of negligence or neglect by Longfellow's. In a greenhouse, it is inevitable that there will be times that there is water on the floor, which could indeed be slippery. However, in this instance, the court is satisfied from the evidence presented that the amount of water on the floor where Rosalie fell was minimal. There was not pooled or standing water, nor even a measurable depth of water. The amount of water on the floor did not require action such as squeegeeing. The amount of water on the floor is what a reasonable person could expect to be found on the floor of a greenhouse at any given time.

Certainly however, even a minor amount of water on a floor could cause it to be slippery. Longfellow's pointed out that even after squeegeeing the floors, a film of water will remain which can be slippery. As stated in the Standard of Review, an owner of premises has a duty to warn or make safe a condition which it knows persons on the premises will still encounter, even

if the condition is obvious. Longfellow's met this duty by placing 3 foot high yellow colored "Wet Floor" warning cones in locations where the floor was wet. There was such a warning cone placed 5 to 7 feet from where Rosalie fell. She simply never saw it.

In summary, the court finds that Rosalie has failed to prove by a preponderance of the evidence that Longfellow's was negligent in the maintenance or care of its premises, or in its procedure of watering plants, and post-watering clean-up. The court further finds that the amount of water on the floor where Rosalie fell was a minimal amount, and not unreasonably unsafe given the circumstances. The building being a greenhouse, it was reasonably foreseeable there could at any time be small amounts of water on the floor rendering the floor slippery. In a greenhouse, it would be impossible to assure the floors are completely dry at all times. The court finds this was an obvious condition. Nonetheless, Longfellow's duly anticipated a customer would encounter the condition or be distracted and not observe the water, and met the duty of care required by warning of the condition. A "Wet Floor" warning cone was conspicuously located next to the location Rosalie fell.

Rosalie also asserts Ellie was negligent in the manner she guided her through the greenhouse, implying Ellie was rushing her. This claim is not supported by the facts. Anyone who has had an occasion to shop in a large "box store" and had to inquire where certain products are located has experienced what Rosalie experienced the day she fell. In large stores it is not unusual for shoppers to need to ask for directions. The usual practice is to find a store employee and ask them to direct you to where a certain product could be found; and the employee often leads the way, walking ahead of the shopper. What happened with Rosalie happens countless times every day at places such as Lowes, Walmart, etc. Ellie did nothing wrong in this instance. By her testimony, which the court accepts, she was only a handful of feet ahead of Rosalie. And Rosalie

never complained to Ellie to slow down. In addition, the fall occurred only after being in the greenhouse for about 15 feet.

To the extent Rosalie asserts Ellie was negligent for not warning her about the water, or not warning her against wearing flip-flops, the court finds those claims also fail. Ellie did not warn about there being water on the floor because she did not see it either. This further supports the finding that whatever water was on the floor was a minimal amount which did not necessitate treatment.

As for wearing flip-flops, Longfellow's did not have a policy prohibiting shoppers from wearing flip-flops. This comports with common sense. Merchants typically require customers to wear shirts and footwear of some type before entering their stores. But ultimately what type of footwear is for the customer to decide. Everyone has a duty to take reasonable care for their own safety, which includes decisions about footwear. That employees were prohibited from wearing flip-flops while working is not relevant, as there as different work-place activities and safety standards for workers.

In conclusion, the court finds that Rosalie has failed to prove by a preponderance of the evidence that Longfellow's was negligent.

The order is:

On Plaintiff Rosalie Boulgier's complaint, judgment is entered for the Defendant

Longfellow's Greenhouses.

The clerk is directed to enter this order on the docket by reference pursuant to M.R.Civ.P.

79(a).

Dated: November 21, 2022

_____

Justice, Superior Court